and I'm going to turn it over to Zach Faircloth on behalf of the appellants, Dr. Paul Touche and Randy Lavosphere. Your Honors, oftentimes when a doctor treats a patient who's 65 years old and suffers from a series of comorbidities, the doctor is left to exercise their medical judgment between alternatives that are not 100% ideal. And that's precisely what happened here. It doesn't implicate the Eighth Amendment. Plaintiff Bobby Stevenson, a 60-year-old inmate at the Louisiana State Penitentiary, sued both Dr. Touche and Dr. Lavosphere for violations of his Eighth Amendment right. He claims they were deliberately indifferent to his ongoing medical care related to an ankle injury he had suffered two decades before. After a motion dismissed, the district court denied them both qualified immunity and that was reversible error for several reasons, foremost of which the Eighth Amendment protects prisoners from, quote, the unnecessary and wanton infliction of pain, well beyond medical malpractice and well beyond even gross negligence. So to plausibly allege a deliberate indifference claim requires plaintiff to show each doctor individually was aware of facts from which the inference could be drawn that substantial risk of serious harm exist, that they subjectively drew that inference, and that they disregarded the risk altogether. Plaintiff has failed to sufficiently allege any of these elements, nor has he identified any clearly established law that would have put the doctors on notice that their conduct could have violated his rights. You can ask him, why was he told that the two times he was X-rayed, he was X-rayed, I believe, in 2020, and I think you referred, there was a 2009 X-ray. There's nothing else in the allegations that would lead us to believe that he was told or wasn't told. I think the problem with that, Your Honor, is that there's no clearly established law that would have put Dr. Lavesphere or Dr. Touche on notice that they had some affirmative obligation to tell him about the screws. The reason, so clearly established law would be the off-ramp there. Yeah, so he asked specifically for the surgery. The problem is, under the deliberate indifference standard, if you go look at the series of published cases, the decision to provide additional treatment is squarely within the doctor's medical judgments. It doesn't implicate the Eighth Amendment, and that's Gobert and all of its progeny. So disagreement about what is the right recommended care, even between the specialist, as they said, Dr. Touche and Dr. Lavesphere, also wouldn't implicate, and that's Carlucci. Well, counsel, for me, if a screw is put in, it's put in for a reason. I don't have to be a medical doctor to know that. So then if the screw is broken, it seems that there ought to be, one, that information ought to be shared with the patient, and two, there ought to be some effort to do something about it. If it was placed there for a reason, unless it's designed to break and remain and it breaks, you'll agree with me that that would suggest that something should be done, even to a lay person. You agree with that? Sure, yes. There should be something done, and there was things done here. Tell me what they did. So what was alleged here is that the complaint actually says, quote, not that absolutely no treatment has ever occurred, in fact, between . . . Let me be more specific. Tell me what they did about the broken screw. Between 2020 and 2022, the plaintiff received adequate treatment in the form of x-ray evaluations. He was provided an ankle brace. He was provided medication. He was provided a hose for leg swelling. He was provided a lace-up brace, and importantly, he was twice referred to a specialist to look at and evaluate the screw. Well, he says Dr. Sylvester recommended that he be evaluated by a surgeon. Did that happen? Was he evaluated by a surgeon? We can't dispute the truth of his allegations here, Your Honor, although we would dispute that at summary judgment stage. Of course, 12B6, we have to accept that for what it is. Even if . . . Well, without disputing his allegations, you're telling me you weren't deliberately indifferent, and at least a part of that is you've got to tell me something you did, because taking his allegations, it sure does look like there was deliberate indifference. Well, under these allegations, Your Honor, there was 100 percent concededly treatment here, and whether there was a disagreement with the specialist, between the specialist and Dr. Toussaint and Dr. Lavisphere about what was the proper treatment going forward, was it surgery or not, which, again, it falls within the medical judgment when you're talking about a 65-year-old man who has several other comorbidities, and the choice and the risk associated with surgery are certainly high for that sort of individual. What about the allegations that the treatment to which you are referring were actually treatments for other conditions, that the brace was merely to stabilize the ankle until he could be evaluated, that the medication and the restriction on sodium was to treat his high blood pressure? What about his allegations? If we have to take those as true, why isn't that sufficient to plead deliberate indifference for purposes of 12e6? Two things, Your Honor. One, I do think that creates sort of a tricky Twombly-Iqbal question of is that a factual allegation or is that an indifference that's probably not reasonable. Let's say it's an allegation. It's a factual allegation. We have to accept it as true. Again, there's no clearly established law—two things. One, it goes to the subjective intent of Dr. Toussaint and Dr. Lavisphere. If they subjectively were, in fact, treating adequately all these other ailments that the plaintiff had, it's hard to draw the inference then that for that one particular isolated ailment, they were deliberately indifferent to the point of wanted infliction of pain. So it all goes back to their subjective intent. And second, that sort of parsing between which particular ailment is being addressed by the doctor is nowhere to be found in the case law. So there's no way that these doctors would have been able to have noted not fixing the broken screws in particular while providing sufficient medical care on a whole host of other fronts was somehow deliberate indifference under the Eighth Amendment. What about the fact that he was continuing to have pain and swelling and disability that was not addressed by these other treatments? Why isn't that classic deliberate indifference? Well, Your Honor, under Domino, the failure to diagnose properly where the pain is coming from isn't deliberate indifference. That's Domino. That's Gobert. That's Gobert. And so even assuming these doctors got it wrong, and we'll accept the allegation is true at this point, even if they got it wrong and they thought it was a result of his hypertension or something else, that is a failure to diagnose properly. And it might be medical malpractice, but it doesn't get into deliberate indifference. I think Gobert might have a policy to try to avoid it. Your Honor, I don't know off the top of my head, and it's not in the allegations either. He went out of his way to get surgery in 2000, and he couldn't do a full day's work. He needed surgery. Surgery was a problem. He couldn't afford a doctor. Yeah. Let me push back just slightly on the timing there. So he alleges that in 2006, or in 2003, he had the injury. And then the next allegation is only that he was put on limited duty status at that time, and at some point between 2003 and 2019, we're not sure when, he was removed from limited duty status altogether. And that seemingly happened a few times between 2006 and 2019. Your Honor, I want to go back to the complaint briefly just to make clear what exactly happened here. So there is a concession in the complaint, in the allegations, which we must accept is true, that there was treatment here. There was an ankle brace that was provided. There was medication provided. There was a lace-up brace provided. There was treatment to try to address the pain. All that this complaint boils down to is a disagreement about whether surgery was the proper course of action or whether or not limited duty status was a proper course of  And let me touch on the limited duty status in particular real quick. The forced work, even with an ankle injury, is not an Eighth Amendment violation under settled precedent in this circuit. That's Bonelos v. McFarland 41F3D232. So the mere pain arising from an ankle injury from having regular duty status is not in and of itself deliberately indifferent. Wasn't it more than just pain though? Wasn't there also swelling and his mobility was affected? Yes, Your Honor. And that was the same in the McFarland case as well. Counsel, how do you distinguish Jackson v. Cain? Pardon me, Your Honor? Jackson v. Cain, which says that it's unlawful to require an inmate to perform work that aggravates his injury. Your Honor, that was actually not a medical deliberate indifference case. It was certainly one of the claims that was alleged. And there, as a matter of fact, the Jackson v. Cain court said that there was no medical deliberate indifference there. However, under a Howard v. Cain analysis of working conditions, which is a separate claim, no one is alleged here, that was what the court said was a constitutional violation. So it's not a claim that's at issue in this case. So Jackson doesn't control. Your Honor, so I want to touch briefly on what I think is the easiest way to resolve this case, and that is on the clearly established law. The court has long held that there's no clearly established right to a particular treatment or an additional treatment. It was the plaintiff's burden, even at this stage, to point to a particular set of cases or particular case that was on all fours of the facts. They couldn't do so, and the best roadmap for that is the Rogers case, which is actually cited in the red brief. The Rogers case, they say that the general broad proposition that Estelle stands for is insufficient to clearly establish the law in this area, and that's especially true because Estelle on remand found that there was no deliberate indifference. And then the only other case that's cited is the Easter case, which fares no better here. There, that was nurses that were told by a patient they knew had a heart condition, had suffered a heart attack in the past, had no heart medication. There was all knowledge within the nurse's field. The patient approached them about needing help with that heart condition. He was struggling. He was having chest pains, and the nurses sent him to a pharmacy that was closed. When he asked again, please, the pharmacy's closed. Can you provide me something? The nurses said no and sent him to a cell where he suffered a heart attack. So Easter doesn't fare any better here. The simple fact of the matter is that this complaint is asking for surgery of broken screws that he wants fixed in his ankle, and I have sympathy for that. But again, the doctors have plenty of leeway under the Eighth Amendment to a series of comorbidities. Do we put him under the surgical knife, or do we continue to try to alleviate the pain and the symptoms that are associated with this to try to make it a little better? Again, that's not a judgment I can make as a lawyer. That's a judgment that the doctors were able to make here. Well, if none of the things that they are doing are working and they choose to do nothing more, how is that not like Easter, where they sent him back to a cell? Well, certainly whatever they were doing was working from 2006 to 2019. It would seem to be that there was some sort of flare-up there. And at the same time, I don't think there's any limiting principle to that, especially when you're talking about a 65-year-old with comorbidities. If they don't solve every health issue he has, it would implicate the Eighth Amendment. And that's just simply not the deliberate indifference standard. There is a subjective intent to cause one in physical pain. As long as the doctors are subjectively trying to help with the pain, that is enough under the Eighth Amendment. Again, it may be negligence. It may be medical malpractice. But this Court time and time again has said that additional treatment or some sort of difference of opinion about what is the correct treatment, even with a specialist, falls squarely within medical judgment and it doesn't implicate the Eighth Amendment. I have just a limited amount of time left. And I want to touch briefly on the jurisdiction question to clear that up. This Court has regularly exercised jurisdiction over denials of motion to dismiss from qualified immunity since Mitchell v. Forsyth. It clearly has jurisdiction to entertain this case as well. There's no reason to think that jurisdiction is an issue here. Thank you, Your Honor. Good afternoon, and may it please the Court. My name is Nathan Celestine. I'm a newly graduated law student here representing plaintiff Bobby Stevenson. I'm arguing pursuant to Federal Rule of Procedure 2 under the supervision of Professor Daniel Hamilton, seated at council table. Bobby Stevenson, acting pro se, sued defendant Drs. Tose and Lathesphere for hiding from him for over 13 years that he had two broken screws in his ankle, ignoring his medical complaints of severe ankle pain, refusing to treat him, and intentionally mistreating him for his ankle injury. The defendants moved to dismiss on the basis of qualified immunity and the district court properly denied that motion. The defendant's appeal of the district court's decision should be dismissed for lack of jurisdiction because this court doesn't have jurisdiction to hear the non-qualified immunity-related issues that the defendants raise on their appeal. If this court does determine that it has jurisdiction to hear this appeal, it should affirm the district court's decision because it correctly determined that the defendants are not entitled to qualified immunity based on Stevenson's well-pleaded allegations and them properly stating the claim of deliberate indifference in violation of the Eighth Amendment. So I'd like to first talk about this jurisdictional issue. This court only has jurisdiction to review purely legal issues relating to qualified immunity at the motion-to-dismiss stage. The only appealable issue here is whether the facts alleged plausibly support the claim of a violation of clearly established law. Here, the defendant's appeal challenges the facts that Stevenson has alleged, and instead the defendants argue this appeal based on their own facts. So, for example, the defendants contend that the medical attention that Stevenson received was for issues unrelated to the broken screws and that that defeats Stevenson's deliberate indifference claim. But this disregards the allegations that Stevenson makes in his complaint that he has received no medical treatment specifically for these broken surgical screws. The defendants also characterize Stevenson's duty status alteration as a mere disagreement with his duty status, but this is also contrary to the allegations. Stevenson is very clear in his complaint. His duty status was deliberately inappropriately altered to knowingly subject Stevenson to more pain. So because the defendant's qualified immunity appeal here is solely premised on their disputes of Stevenson's allegations, allegations that were properly accepted by the district court, this court lacks jurisdiction to hear this appeal. If this court does determine that it has jurisdiction to hear this appeal, though we don't concede that, the district court correctly determined that Stevenson's allegations state a claim of deliberate indifference. So as this court is no doubt familiar, under Domino v. Texas Department of Criminal Justice, a complaint states a claim for deliberate indifference when the plaintiff alleges that the defendants refused to treat, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that evinces a wanton disregard for the plaintiff's serious medical needs. So Stevenson's complaint sufficiently alleges deliberate indifference under any one of these standards, even though only one is sufficient. He, at the very least, has alleged that the defendants have engaged in other conduct, this catch-all standard that would evince a wanton disregard for his serious medical needs. Does your claim rise or fall on whether or not we credit or accept your allegation that Stevenson was referred to an orthopedic surgeon? So, no, Your Honor, and that's because that's only one of the several allegations that Stevenson makes in his complaint. So he alleges that the defendants knew the source of his pain and hid it from him for over 15 years. He alleges that the defendants understood that they were not qualified to treat these broken surgical screws and refused to send him for evaluation by somebody who was. He alleges that the defendants prevented him from an opportunity, and this goes to that point, to see an orthopedic surgeon that could properly determine the course of treatment. And he alleges that the defendants sent him back to work in the morning on this severely severe injury. There can't be any dispute that these allegations sufficiently reflect a wanton disregard for Stevenson's serious medical needs. Additionally, Stevenson's complaint meets the refuse to treat standard under the deliberate indifference test. The complaints are replete with allegations that the defendants refused to treat Stevenson, that Laysphere intended to cause Stevenson's suffering by altering his duty status, that the defendants knew of and refused to treat Stevenson's pain and suffering for 15 years, that the defendants did nothing to provide Stevenson access to the orthopedic surgeon as recommended, and that the defendants ignored his complaints of pain despite constant reporting over the course of 15 years and the defendants' continued medical treatment of Mr. Stevenson. And by that I mean by way of being his prison-assigned primary care physicians. So second, Stevenson alleges that the defendants intentionally mistreated him. Laysphere ordered Mr. Stevenson back to a regular duty status, according to Stevenson and his allegations, knowing that it would subject him to more pain and exacerbate his ankle injury. This, as Your Honor mentioned, is a repeat of Jackson v. Kane. In that decision, this court determined that knowingly putting a prisoner on a work detail that the defendants knew would significantly aggravate his serious physical condition would constitute deliberate indifference to serious medical needs. This is directly analogous. Stevenson repeatedly alleges, just to touch on whether or not there was treatment, that the defendants have not treated Stevenson for specifically the ankle injury. He asserts that, and mind you, at the 12B6 stage, this court has to draw inferences in favor of the non-movement Stevenson, not the defendants, that he has received no treatment for the broken surgical screws and that what treatment he has received were for other issues, pulmonary hypertension, venous insufficiency, a heel spur. All of these have nothing to do with the injury that Stevenson has made the subject of this complaint, nor the allegations that Stevenson has asserted. Yes, Your Honor. Finally, as to the ignored complaints of pain, Stevenson alleges that both the defendants, Lathesphere and Tose, knew of the presence of these broken surgical screws the entire time that they were his primary care providers at Angola, and yet did nothing to provide him access to a specialist to have the screws removed or repaired, despite Stevenson seeking diagnosis for that pain, swelling, and disability for all of that time. Counsel, regarding the duty status change, the appellants contend that refusing to grant a duty status change is not an Eighth Amendment violation, and they cite in support of that contention Winston v. Stacks. What do you say to that? Refusing to grant a particular duty status might not be, but that's not the situation that we have here. Here we have, as Stevenson has alleged, a knowing alteration of his duty status from being out of field to regular duty. It was intentional and done for the purpose of exacerbating Stevenson's ankle injury, causing him further pain. Again, this court has determined in Jackson v. Cain that that does meet the standard. I'd also like to talk about how the defendant's conduct was clearly established to violate Mr. Stevenson's Eighth Amendment rights. As this court is no doubt aware, the clearly established prong of the qualified immunity analysis doesn't require us to present a case that's identical but would put a reasonable officer on notice that his conduct violated. That's a concession that you don't have one that's identical, do you? We would reason that we do, Your Honor. Firstly, Easter v. Powell asserts that the deliberate indifference test from Domino is itself a clearly established violation of the law. So where we do make allegations that Stevenson, that the defendants have refused to treat Mr. Stevenson, that they've deliberately disregarded his complaints of pain, that they've intentionally treated him incorrectly and evince other wanton disregard to Stevenson's medical needs, that this does already meet the clearly established prong of qualified immunity. If this court would prefer us to present a case that's more analogous to the facts, again, Easter v. Powell, this court determined that a plaintiff that was subjected to merely four hours of chest pain had stated a successful claim for deliberate indifference. Here, Stevenson is alleging that he's not received medical treatment for 15 years. Additionally, again, Jackson v. Cain knowingly putting a plaintiff on a work detail that would subject him to serious harm. Also Carlucci v. Chapa insofar as the allegation that the defendants have refused to send Mr. Stevenson to be evaluated by an orthopedic surgeon as it was recommended. So based on these previous cases, Stevenson has sufficiently alleged a violation, a clearly established violation of his constitutional rights and the district court's denial of qualified immunity should be affirmed. Finally, this court lacks jurisdiction to decide the defendants' non-immunity related issues that they raise on appeal. Specifically, they contend that the district court erred in refusing to consider documents that were attached to the complaint and documents attached to the defendant's motion to dismiss. So it's well established that issues unrelated to qualified immunity are not appealable at the pleading stage as we are here. Whether the district court properly considered these documents is outside of the scope of the qualified immunity analysis. This is not a question that this court has jurisdiction to entertain. But even if this court determines that it does, the district court didn't abuse its discretion in deciding not to consider these documents because it has such broad discretion when matters outside the pleading are presented with a motion to dismiss. The district court can even refuse to consider documents that seemingly conflict with the allegations in the complaint. Accordingly, this court should affirm the district court's exercise of its discretion. Unless there are further questions, we would ask that this court dismiss this appeal for lack of jurisdiction or in the alternative, affirm the district court's denial of the defendant's motion to dismiss. Thank you, counsel. Rebuttal. Your Honor, just briefly, so this case doesn't turn on looking at the medical records or not. We take the position that you can look at the medical records as referenced in the complaint, but to the extent you find them not referenced in the complaint, it's your de novo review. The allegations in the complaint, the incorporated by reference original complaint, and the two exhibits attached to the complaint are almost certainly all within the scope of the well-pleaded allegations here. That's what you should consider. I want to start first laying out what this court has found to be deliberate indifference On the first front, Kelson, a case that the other side relies on heavily. A homeless man was detained pretrial after he had suffered several beatings that led to visible head wounds, and instead of treating him, the paramedics mocked him and then lied in their official reports about interacting with him, and he died later bleeding out from the head wound. Kelson is not this case. In Carlucci, a dentist had recommended oral surgery because the plaintiff's teeth were hitting together to a point where it was unbearable and they were cracking, and the prison did not provide treatment. This case is not a dental case like Carlucci. And finally, Harris v. Hegman, an inmate requested immediate medical treatment for a broken jaw following a fight, and then he was experiencing excruciating pain, and the nursing staff instead said, we will provide no care to you. And then, when he came back, they declined to offer him care for a whole other week. This is not Harris. In contrast, the court has long said that additional treatment is, quote, a classic example of a matter for medical judgment. That's Gobert, that's Carlucci. Carlucci also says that disagreement about recommended medical treatments is not in and of itself an Eighth Amendment problem. Thompson says that deliberate indifference cannot be inferred from negligence, or even gross negligence, in response to a substantial risk of serious harm. And again, the McFarland case stands for the proposition . . . Counsel, if we assume that Dr. Sylvester or somebody recommended that Mr. Stephenson be seen by a surgeon, then how is this different from Carlucci? Carlucci was a dentistry case, and that matters here, because it's not within the medical judgment of a medical doctor to make a dentistry call. Whereas, these were both . . . the specialist and the medical doctors at Angola have that within their medical judgment, the call they can make. So, that's the distinction there between Carlucci. And again, it gets to a clearly established law problem, because the facts of Carlucci look nothing like the facts in this case. And, in Carlucci, there was no example of any other treatment that was provided. Here, we've got scores of examples, ROA 1275 to 1280, alleged that there was the brace, and again . . . That other treatment is just unrelated to the main complaint. But certainly related to his health, and that matters for the purposes of subjective intent of what the doctors were trying to accomplish. And it also goes into the clearly established law problem of parsing between which particular ailments is a particular . . . is a particular treatment going to treat. Again, even the weird sort of Twombly-Ickle problem that creates a visit of factual allegation or an inference, I agree, but still, on this record, it falls well short of Kelson, Carlucci, Harris, these other cases where there has been deliberate indifference. And this is simply a disagreement about whether additional treatment was required here, and it is a disagreement about what is the recommended course going forward. It was a 65-year-old man who had several comorbidities, and the doctors made a judgment call as to whether surgery was right or treating the pain and the symptoms were right, which is precisely what he alleges in his complaint. Again, 1277 says, yes, they treated the symptoms, but they did not treat my broken screws. And oftentimes, in tough situations with tough patients like this, that is a judgment call a doctor has to make between two bad options. And just because a doctor only has two bad options available doesn't necessarily implicate the Eighth Amendment. So, Your Honors, we ask respectfully that you reverse and render in this case, and you have jurisdiction to do so. If there are no further questions, I'll yield the remainder of my time. All right. Thank you, Counsel. Thank you, Your Honor. Appreciate it. Well, we'll take this matter under advisement. I do want to say that this case has been well-argued by both sides, but I want to especially commend Mr. Celestine for getting a diploma in one hand and then an invitation to argue before the Fifth Circuit in the other hand at about the same time. So it's commendable a job that both of you have done this afternoon. We are adjourned.